UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:20-cv-20995

SADE HENRY, *individually*
*and on behalf of all others similarly situated*;

                Plaintiff,        COLLECTIVE AND
                                       CLASS ACTION
                                       REPRESENTATION

vs.

RA SUSHI HOLDING CORPORATION,
RA SUSHI TOWNE SQUARE CORP.,

                Defendants.

**COLLECTIVE AND CLASS ACTION COMPLAINT**

Plaintiff, Sade Henry, individually and on behalf of herself all others similarly situated, upon personal knowledge as to herself, and upon information and belief as to other matters, alleges as follows:

**NATURE OF THE ACTION**

1. This lawsuit seeks to recover minimum wages, overtime wages, and other damages for Plaintiff and her similarly situated co-workers – servers, bussers, runners, bartenders, and other "Tipped Workers" – who work or have worked at any RA Sushi restaurant in the United States.

2. Owned and operated by RA Sushi Holding Corporation and RA Sushi Towne Square Corp. (together, "RA Sushi" or "Defendants"), the RA Sushi Restaurants are well-known sushi restaurants with over 20 dining-in restaurants in the United States. RA Sushi's corporate headquarters is located at 21500 Biscayne Boulevard, Suite 900, Aventura, Florida 33180.

3. Based out of Aventura, Florida, Defendants operate dine-in RA Sushi restaurants

1

in states such as Florida, Arizona, Texas, California, Georgia, Illinois, Kansas, Maryland, Missouri, and Nevada.[1]

4. The Ra Sushi restaurants are linked together through a central website – www.rasushi.com. This central website allows visitors to book reservations at each restaurant, make delivery orders at each restaurant, check each restaurant's hours of operation, and review the menus at each restaurant. Gift certificates offered through this central website may also be redeemed at any of the RA Sushi Restaurants nationwide.[2]

5. Defendants have been part of a single integrated enterprise that has jointly employed Plaintiff and other Tipped Workers. Defendants have maintained control, oversight, and direction over Plaintiff and similarly situated employees, including the ability to hire, fire, and discipline them.

6. At all times relevant, Defendants paid Plaintiff and others similarly situated Tipped Workers at the "tipped" minimum wage rate.

7. Defendants, however, have not satisfied the strict requirements under the FLSA that would allow them to pay Tipped Workers this reduced minimum wage (i.e. - take a "tip credit").

8. Defendants failed to properly notify Plaintiff and similarly situated Tipped Workers of the tip credit provisions of the FLSA, or of their intent to apply a tip credit to their wages.

9. Defendants also maintained a policy and practice requiring Plaintiff and similarly situated Tipped Workers to engage in a tip distribution scheme wherein they must share a daily portion of their total tips with individuals not eligible to receive tips, namely, sushi chefs.

---

[1] *See* Locations, Ra Sushi Website (*available at* https://rasushi.com/locations/) (last accessed March 2, 2020).
[2] Gift Cards, RA Sushi Website (*available at* https://rasushi.com/gift-cards/) (last accessed March 2, 2020).

10. Individuals employed as Sushi Chefs are responsible for preparing and making sushi and have virtually no customer interaction. In this regard, Sushi Chefs do not customarily and regularly wait on customers, take customer orders, or deliver food or beverages to customers. As a result, Sushi Chefs at RA Sushi are not entitled to share tips under the FLSA. *See e.g.*, *Ash v. Sambodromo, LLC*, 676 F. Supp. 2d 1360, 1363 (S.D. Fla. 2009) (denying summary judgment where plaintiffs alleged that sushi chefs did not have sufficient customer interaction to receive tips).

11. Throughout Plaintiff's employment, Defendants also maintained a policy and practice whereby Tipped Workers were not paid the appropriate premium overtime pay for hours worked in excess of 40 per workweek, as such wages were paid based at the tip credit minimum wage, not the full minimum wage.

12. Plaintiff brings this action on behalf of herself and similarly situated current and former Tipped Workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiff and others similarly situated of their lawfully earned wages.

13. Plaintiff also brings this action on behalf of herself and similarly situated current and former Tipped Workers under theories of Unjust Enrichment and Conversion under Federal Rule of Civil Procedure 23 ("Rule 23").

## **THE PARTIES**

### **Plaintiff**

**Sade Henry**

14. Henry is an adult individual who is a resident of Dallas County, Texas.

15. Henry was employed by Defendants at the RA Sushi restaurant located at 7501 Lone Star Drive, Plano, Texas from approximately August 2018 through November 2018 as a bartender and server.

16. Henry is a covered employee within the meaning of the FLSA.

17. A written consent form for Henry is being filed contemporaneously with this Complaint.

**Defendants**

18. Defendants RA Sushi Holding Corporation and RA Sushi Towne Square Corp. have jointly employed Plaintiff and similarly situated employees at all times relevant.

19. Each Defendant has had substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

20. During all relevant times, Defendants have been Plaintiff's employers within the meaning of the FLSA.

**RA Sushi Holding Corporation**

21. Together with the other Defendant, RA Sushi Holding Corporation ("RA Sushi Holding") has owned and operated the RA Sushi Restaurants during the relevant time period.

22. RA Sushi Holding is a foreign corporation organized and existing under the laws of Delaware. It lists a business address of 8750 NW 36th Street, Suite 300, Miami, Florida 33178.

23. At all relevant times, RA Sushi Holding has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices. In this regard, in past trademark litigation brought by RA Sushi Holding, it has stated that it "operates twenty-five (25) high profile restaurants located through the United States." *See RA Sushi Holding Corporation v.*

*1225 Raw, Inc.*, No. 2:15-cv-02222, Dkt. No. 1 ¶ 12 (E.D. Pa April 24, 2015); *see also RA Sushi Holding Corporation v. Sushi Raw Group Inc.*, 3:14-cv-03436, Dkt. No. 1 ¶ 13 (N.D. Cal. July 29, 2014).

24. Based on information and belief, RA Sushi Holding owns and operates the restaurants' central website, www.rasushi.com, which provides information about the Restaurants, the company's history, and allows customers to book reservations and events.

25. RA Sushi Holding applies the same employment policies, practices, and procedures to all Tipped Workers at the RA Sushi restaurants, including policies, practices, and procedures with respect to payment of minimum and overtime wages.

26. Upon information and belief, at all relevant times RA Sushi Holding has had an annual gross volume of sales in excess of $500,000.

**RA Sushi Towne Square Corp.**

27. Together with the other Defendants, RA Sushi Towne Square Corp. ("Sushi Towne Square") has owned and operated the RA Sushi Restaurants during the relevant time period.

28. RA Sushi Towne Square is a domestic corporation organized and existing under the laws of Florida. It lists 21500 Biscayne Blvd Suite 900, Aventura FL 33180 as its principal place of business. This is the same address listed on RA Sushi's website as its corporate headquarters.[3]

29. At all relevant times, RA Sushi Towne Square has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

---

[3] *See* Company Info, RA Sushi Website (*available at* https://rasushi.com/company-info/) (last accessed March 3, 2020).

30. Based on information and belief, RA Sushi Towne Square is the corporate payor that appears on Tipped Workers' paystubs.

31. RA Sushi Towne Square applies the same employment policies, practices, and procedures to all Tipped Workers at RA Sushi, including policies, practices, and procedures with respect to payment of minimum and overtime wages.

32. Upon information and belief, at all relevant times RA Sushi Towne Square has had an annual gross volume of sales in excess of $500,000.

## JURISDICTION AND VENUE

33. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331.

34. This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

35. In addition, this Court has supplemental jurisdiction over Plaintiff's common law claims, pursuant to 28 U.S.C. § 1367(a), because those claims derive from a common nucleus of operative facts.

36. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(1) because Defendants' principal place of business is in this District.

## COLLECTIVE ACTION ALLEGATIONS

37. Plaintiff brings the First and Second Causes of Action, FLSA claims, on behalf of herself and all similarly situated persons who work or have worked as Tipped Workers at RA Sushi in the United States from March 5, 2017 and the date of final judgment who elect to opt-in to this action (the "FLSA Collective").

## CLASS ACTION ALLEGATIONS

38. Plaintiff brings the Third and Fourth Causes of Action, common law claims, under Rule 23, on behalf of herself and a class of persons consisting of:

> All persons who work or have worked as Tipped Workers at RA Sushi between March 5, 2018 – or within the applicable statute of limitations period for the respective state in which they worked preceding the date the instance action was initiated – and the date of final judgment in this matter ("the Nationwide Class").

39. The Nationwide Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

40. There are more than 40 Nationwide Class members in each state that RA Sushi does business in the United States.

41. Plaintiff's claims are typical of the claims of the Nationwide Class, because she, like the Nationwide Class, was paid at the tip credit rate of pay and was made to share tips with tip-ineligible employees. Plaintiff's claims are typical of those claims that could be alleged by any of the Nationwide Class members, and the relief sought is typical of the relief which would be sought by each member of the Nationwide Class in separate actions.

42. Plaintiff and the Nationwide Class have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all the Nationwide Class similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Nationwide Class Members.

43. Plaintiff is able to fairly and adequately protect the interests of the Nationwide Class and has no interests antagonistic to the Nationwide Class.

44. Common questions of law and fact exist as to the Nationwide Class that

predominate over any questions only affecting Plaintiff and the Nationwide Class Members individually.

45. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Nationwide Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Nationwide Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual Nationwide Class Members would create a risk of inconsistent and/or varying adjudications with respect to the individual Nationwide Class Members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Nationwide Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

46. Common questions of law and fact exist as to the Rule 23 Class that predominate

over any questions only affecting Plaintiff and the Rule 23 Class Members individually and include, but are not limited to, the following:

> (a) whether Defendants misappropriated tips from Plaintiff and the Nationwide Class Members to sushi chefs.

## PLAINTIFF'S FACTUAL ALLEGATIONS

47. Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiff, individually, as follows:

**Sade Henry**

48. During her employment, Henry generally worked the following scheduled hours, unless she missed time for vacation, sick days, and/or holidays or obtained additional shifts:

> (a) 5 to 6 days per week, consisting of a combination of lunch and dinner shifts, for an approximate average of 35 to 46 hours per week.

49. Throughout her employment, Defendants applied a tip credit towards the minimum wage rate paid to Henry for work performed. Defendants failed to properly notify Henry of the tip credit provisions of the FLSA, or of their intent to apply a tip credit to her wages.

50. Defendants' mandatory tip pooling arrangement at RA Sushi allocated a portion of Henry's tips to employees who are in positions that are not entitled to tips under the FLSA, including, but not limited to, sushi chefs.

51. As a result of the above, Defendants did not satisfy the requirements under the FLSA by which they could apply a tip credit to Henry's wages. As such, Henry was entitled to receive the full statutory minimum wage for the first 40 hours per workweek, and time and one-half the full minimum wage rate for all hours worked beyond 40 per workweek. Moreover, Henry is entitled to the value of tips misappropriated to sushi chefs.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Minimum Wages**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

52. Plaintiff, on behalf of herself and the FLSA Collective, realleges and incorporates by reference all allegations in all preceding paragraphs.

53. The minimum wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff and the FLSA Collective.

54. Defendants have not been eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants failed to provide proper notice of the tip credit.

55. Defendants have also not been eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants required Plaintiff and the FLSA Collective to distribute a portion of their tips to workers who do not "customarily and regularly" receive tips, including but not limited to, sushi chefs.

56. As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**SECOND CAUSE OF ACTION**
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

57. Plaintiff, on behalf of herself and the FLSA Collective, realleges and incorporates by reference all allegations in all preceding paragraphs.

58. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and

the supporting federal regulations, apply to Defendants and protect Plaintiff and the FLSA Collective.

59. Defendants failed to pay Plaintiff and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times the full minimum wage rate – for all hours worked beyond 40 per workweek.

60. As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

## THIRD CAUSE OF ACTION
### Violation of Common Law: Unjust Enrichment
**(Brought on behalf of Plaintiff and the Nationwide Class)**

61. Plaintiff, on behalf of herself and the Nationwide Class, realleges and incorporates by reference all allegations in all preceding paragraphs.

62. At all times relevant, Plaintiff and the Nationwide Class conferred a benefit on Defendants by providing services to the Restaurants' guests, resulting in gratuities paid by customers.

63. At all times relevant, Defendants were aware of these benefits conferred upon them by Plaintiff and the Nationwide Class.

64. At all relevant times, Defendants distributed a portion of these gratuities to non-tip eligible employees, such as sushi chefs.

65. Defendants have been unjustly enriched by the retention and distribution of gratuities to non-service employees because by doing so, Defendants effectively lowered their labor costs associated with sushi chefs.

66. Plaintiff and the Nationwide Class suffered detriment due to Defendants' failure to properly compensate them for work performed described therein

67. Under the circumstances, Defendants' distribution of this of gratuities would be inequitable.

68. As a direct and proximate result of Defendants' actions, Plaintiff and the Nationwide Class suffered damages, including but not limited to, loss of gratuities.

## FOURTH CAUSE OF ACTION
### Violation of Common Law: Conversion
**(Brought on behalf of Plaintiff and the Nationwide Class)**

69. Plaintiff, on behalf of herself and the Nationwide Class, realleges and incorporates by reference all allegations in all preceding paragraphs.

70. At all times relevant, Plaintiff and the Nationwide Class had a property interest in gratuities left by customers at the Restaurants. In this regard, customers at RA Sushi were not advised that Defendants would distributing a portion of gratuities to non-tip eligible positions, such as sushi chefs.

71. Defendants asserted dominion over Plaintiff's and the Nationwide Class Members' gratuities by distributing a portion of these gratuities to tip-ineligible employees, such as sushi chefs.

72. The retained gratuities are readily identifiable through Defendants' records.

73. As a direct and proximate result of Defendants' actions, Plaintiff and the Nationwide Class suffered damages, including but not limited to, loss of gratuities.

74. As a result of Defendants' unlawful conduct, the Plaintiff and the Nationwide Class are entitled to damages from Defendants including, but not limited to, unpaid gratuities.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually, and on behalf of all other similarly situated persons, respectfully requests that this Court grant the following relief:

A. That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all Tipped Workers who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked at RA Sushi. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B. Unpaid minimum wages, overtime wages, and an additional and equal amount as liquidated damages pursuant to the FLSA;

C. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure with respect to Plaintiff's unjust enrichment and conversion claims;

D. Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

E. The full amount of all gratuities unlawfully distributed to non-tip eligible employees by Defendants;

F. Reasonable attorneys' fees and costs of the action; and

G. Such other relief as this Court shall deem just and proper.

Dated: March 5, 2020

Respectfully submitted,


 /s/ Armando A. Ortiz_____
 Armando A. Ortiz

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer, *Pro Hac Motion Forthcoming*
Armando A. Ortiz (FBN: 0102778)
28 Liberty 30th Floor
New York, New York 10005
Telephone: (212) 300-0375
Facsimile: (212) 481-1333
Email: aortiz@fslawfirm.com

*Attorneys for Plaintiff and*
*the Putative Collective and Class*

## FAIR LABOR STANDARDS ACT CONSENT

1. I consent to be a party plaintiff in a lawsuit against RA Sushi and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2. By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

_Sade R. Henry (Jun 25, 2019)_
Signature

# Sade R. Henry
Full Legal Name (Print)