UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:20-CV-20995-GOODMAN

NATHAN CADRIEL and KANSAS CALLAWAY,
Individually and on behalf of all others similarly situated;

    Plaintiffs,

v.

RA SUSHI HOLDING CORPORATION,
RA SUSHI TOWNE SQUARE CORP.,

    Defendants.
_____/

**JOINT MOTION TO APPROVE CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE, FOR *IN CAMERA* INSPECTION AND FOR ENTRY OF FINAL ORDER OF DISMISSAL OF ACTION WITH PREJUDICE**

Plaintiffs, Nathan Cadriel and Kansas Callaway, on behalf of themselves and the opt-in plaintiffs who have joined this action (collectively, "Plaintiffs") and Defendants,[1] by and through their undersigned counsel, jointly request judicial approval of the settlement reached in this matter and for an entry of a Final Order of Dismissal with Prejudice.

Although the case was filed as a proposed class and collective action, for reasons stated below, no class was sought or certified during the brief pendency of the litigation. This settlement covers only the nine (9) individual named and opt-in plaintiffs, and is not made on behalf of a class.

---

[1] Defendants refers to RA Sushi Holding Corporation and RA Sushi Towne Square Corp.

1

Due to the confidential nature of the Parties' settlement terms, the Parties also respectfully request that the Court allow the Parties to submit the Settlement Agreement for an *in camera* inspection.

## PRELIMINARY STATEMENT

Plaintiffs filed their original complaint on March 5, 2020 and the operative Amended Complaint on June 19, 2020. *See* D.E. 1, 38. As of this date, seven (7) additional individuals have joined as opt-in plaintiffs.[2] Plaintiffs allege that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") by failing to pay Plaintiffs proper minimum and overtime wages. Plaintiffs allege that Defendants paid Plaintiffs at sub-minimum wages but were unable to do so because they failed to meet the strict requirements of the "tip credit" that would allow them to pay such sub-minimum wages. Specifically, Plaintiffs allege that Defendants instituted a policy where Tipped Workers were required to share a portion of their tips with sushi chefs, which Plaintiffs contend are not tip-ineligible positions due to their lack of sufficient customer interaction. Defendants at all times have denied any wrongdoing and have strongly maintained that sushi chefs have sufficient customer interaction to receive tips. Defendants also maintain that Plaintiffs' respective employers at all times satisfied all requirements for properly taking a tip credit against tipped employees' wages. Defendants also invoked arbitration agreements for several of the Plaintiffs in this matter, which would have required them to pursue their claims in individual arbitration proceedings. For the sole purpose of seeking court approval of this settlement, the Parties have waived their right to arbitration pursuant to those arbitration agreements, as provided in the Confidential Settlement Agreement and General Release ("Settlement Agreement").

---

[2] These individuals are Sade Henry, David Bob, Ishona Corlette, Nicole McGandy, Toria Karas, Daniella Montero, and Tyler Karas.

To avoid the costs and uncertainty of litigation, the Parties have negotiated a settlement in this matter for the named plaintiffs and those individuals who have filed opt-in notices. Pursuant to *Lynn's Foods Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), such claims for FLSA wages may be settled or compromised only with the approval of the district court or the Secretary of Labor.

Further, the Parties respectfully request that they be allowed to submit the Settlement Agreement to the Court for an *in camera* review as allowed by this and other courts in this district. *See, e.g.*, *Nicasio v. Florida BC Holdings, LLC, et al.*, No. 19-20178-CIV-ALTONAGA/Goodman, D. E. 36 (S.D. Fla. March 29, 2019) (Goodman, J.) (applying an *in camera* review of FLSA Settlement Agreement); *Moore v. South Florida Restoration, Inc.*, No. 18-21956-CIV-COOKE/Goodman, 2018 WL 6620111, at *1 (S.D. Fla. Nov. 16, 2018) (Goodman, J.) (applying an *in camera* review of FLSA settlement); *Robles v. Krispy Kreme of South Florida, LLC*, No. 15-cv-60261-JEM, D.E. 26 (S.D. Fla. Aug. 21, 2015) (allowing *in camera* inspection of settlement agreement). As such, the Parties have submitted a copy of the Settlement Agreement to the Court via email for *in camera* review.

**ARGUMENT**

Approval of an FLSA settlement is warranted where a settlement resolves a *bona fide* dispute between the parties "with respect to coverage [and] amount due under the Act," is fair and reasonable, and is the product of serious, informed, arms-length negotiations. *Lynn's Food Stores*, 679 F.2d at 1353 n.8. In making this fairness determination, courts may "look at a number of factors to determine reasonableness, including (1) existence of fraud; (2) complexity of the case; (3) the point of the proceedings when the settlement occurs; (4) the probability of success on the merits; (5) the range of possible recovery; and (6) counsel's opinion." *McHone v. Donald P.*

*Hoekstra Plumbing, Inc.*, No. 10-60322-CIV, 2010 WL 4625999, at *1 (S.D. Fla. Nov. 4, 2010). The Parties respectfully submit that these factors warrant judicial approval of this settlement.

> **A.  Factors 1 & 3: No Fraud Exists Because the Settlement is the Result of Arm's Length Negotiation Between Experienced Counsel and Settlement Occurred After Sufficient Disclosure of Records.**

Here, both Plaintiffs' and Defendants' counsel have litigated and ultimately negotiated this settlement at arm's length. In this regard, the settlement was reached after counsel held numerous telephone calls regarding the claims and defenses at hand. In addition, Defendants provided Plaintiffs' Counsel with certain documents that they argued illustrated sushi chef's sufficient customer interaction to receive tips.  Further, as the Court will see upon review of the Settlement Agreement, all Plaintiffs have executed the agreement, which specifically state their individual amounts from the settlement, along with Plaintiffs' counsel's sought attorneys' fee and costs.

> **B.  Factor 2:  The Complexity of this Matter Supports Approval.**

Factor 2 weights in favor of approval because this is not a "normal" or straightforward FLSA restaurant wage and hour claim. Rather, this case centers upon whether Defendants instituted an invalid tip pooling arrangement at their restaurants that would take away their ability to use the tip credit to pay Plaintiffs sub-minimum and overtime wages.  Furthermore, the RA Sushi restaurants are located in multiple states nationwide, and are subject to different state minimum wage and tip credit laws from state to state. Like any nationwide class action, this significantly complicates the potential certification of a class, as well as the prosecution and defense of such an action. This settlement is on behalf of the nine (9) named and opt-in plaintiffs only, and is not on behalf of any class.

Under the FLSA, an employer violates § 203(m), and is therefore not entitled to a tip credit, if it dilutes the tip pool by including employees who do not customarily receive tips, such as

employees who play a limited or non-existent customer service role. *See* 29 U.S.C. § 203(m); *Ash v. Sambodromo LLC*, 676 F. Supp. 2d 1360, 1370 (S.D. Fla. 2009) ("[I]f tipped employees are required to participate in a tip pool with other employees who do not customarily receive tips, then the tip pool is invalid and the employer is not permitted to take a 'tip credit.'"); *Wajcman v. Investment Corporation of Palm Beach*, 620 F.Supp.2d 1353, 1355 n.3 (S.D. Fla. 2009). "Courts determining whether an employee is a tipped employee have focused on the amount of customer interaction." *Ash*, 676 F.Supp.2d at 1370 (citing cases); *Rubio v. Fuji Sushi & Teppani, Inc.*, No. 11 Civ. 1753 (TBS), 2013 WL 230216, at *2 (M.D. Fla. Jan. 22, 2013).

Here, Plaintiffs argued that sushi chefs had a limited customer service role but nonetheless received a portion of the tip pool at the restaurant. However, Defendants argued that sushi chefs at RA Sushi have more than a limited customer service role, and would also rely upon several Department of Labor Opinion Letters that have found sushi chef's participation in tip pools permissible in certain circumstances. *See* WHD Opinion Letter FLSA2008-18, (Dec. 19, 2008), *available at* http://www.dol.gov/whd/opinion/FLSA/2008/2008_12_19_18_FLSA.htm.

Therefore, the issue at hand is highly factual in nature, and may require a trial on the merits. *See Ash*, 676 F. Supp. 2d at 1370 (denying summary judgment as to sushi chef's eligibility because "a reasonable jury could conclude that the sushi chefs had only minimal direct contact with the customers . . . ."); *Wajcman v. Investment Corp. of Palm Beach*, No. 07 Civ. 80912, 2006 WL 783741, at *3-*4 (S.D. Fla. March 20, 2008) (denying the defendants' motion for summary judgment where the defendants failed to show that cardroom floor supervisors had any more than *de minimus* interaction with customers and stating that "the inquiry properly looks to both the quantity and quality of customer interaction"); *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 132 (S.D.N.Y. 2014) (denying the defendants' motion for summary judgment where the plaintiffs

5

maintained that sushi chefs did not take customer orders, had no contact with customers, and did not serve customers seated at the sushi bar).

Due to this, the complexity of the matter supports approval because the Settlement alleviates the risks associated with the underlying merits. Moreover, given that Defendants provided signed individual arbitration agreements for some Plaintiffs, this case would ultimately be simultaneously prosecuted in numerous venues, further adding complexity to the ultimate resolutions of the claims at hand.

      C.      **Factor 4: Both Sides Faced Risk on the Merits.**

This factor supports approval of this settlement because both sides faced significant risk on the underlying merits of the case. As explained above, this case centers upon whether Defendants instituted a valid or invalid tip pooling arrangement at their restaurants located in various different states. In the event a fact-finder determined sushi chefs had more than limited customer interaction, then sushi chefs would be eligible to receive tips and Plaintiffs would be owed nothing. On the other hand, if a factfinder determined sushi chefs at each different restaurant had limited to no customer interaction, then Defendants would be liable for minimum and overtime wage differential damages. *See, e.g.*, *Wajcman*, 620 F.Supp.2d at *1355 (finding cardroom floor supervisors tip-ineligible and awarding unpaid minimum wages due to inability to use tip credit). Therefore, while both sides believed that they would be successful on the merits, this settlement alleviates the risk associated with the claims and defenses in this matter.

In addition to risk on the merits, the Parties also faced additional complications in both prosecuting and defending this action due to the ongoing COVID-19 pandemic. COVID-19 has without question significantly affected the restaurant industry, Defendants' restaurants included, due to ongoing shut down orders in and outside the State of Florida. Given the uncertainty that lies

ahead, it would be imprudent to not consider the additional complications caused by COVID-19 in both the near- and long-term. As a result, the Settlement Agreement takes into account this additional risk created by the COVID-19 Pandemic.

**D.     Factors 5 & 6: The Range of Recovery, the Settlement Amount, and the Opinion of Counsel Supports Approval.**

Factors 5 and 6 weigh in favor of approval because Plaintiffs will recover a significant portion of their alleged damages.

Unlike many wage and hour restaurant cases, Defendants here kept accurate records of hours worked and paid its workforce for all hours worked based upon their compensation plan. Therefore, Defendants had a stronger than usual argument for showing "good faith" to avoid liquidated damages under the FLSA given this and the nature of the legal claims here.  Given the legal and other risks discussed above, the Parties submit that the Settlement Agreement provides for a significant recovery for Plaintiffs at this stage of the litigation.

Counsel for the Parties all are well-versed in wage and hour law and litigation, meaning that at all times their discussions and negotiations were based in sound understanding of the applicable law specific to this case. Plaintiffs' Counsel has significant experience litigating similar claims involving the sushi chef customer service and interaction issue. With this background, Plaintiffs' Counsel has considered Defendants' preliminary evidence that they contend demonstrate sushi chef customer interaction that is not typical of other sushi chef cases.  Given the risks described above, Plaintiffs' Counsel believes that the Settlement is a fair compromise of this action because it provides a good portion of Plaintiffs' base damages to them on a timely basis, and alleviates the need for further long-term litigation. As a result, this settlement is a "fair and reasonable" settlement of the Parties' bona-fide dispute and should be approved.

## THE COURT SHOULD APPROVE THE ATTORNEYS' FEES AND COSTS

Under the FLSA, a prevailing plaintiff is entitled to their reasonable attorneys' fees and expenses. 29 U.S.C. § 216(b). Here, Plaintiffs' Counsel respectfully asks the Court to approve the attorneys' fees of one-third the total settlement amount, plus their out-of-pocket costs. Courts in this district routinely approve attorneys' fee award of one-third or larger in FLSA cases. *See, e.g., Arriaga v. 450 North River Drive LLC*, No. 19 Civ. 25174-JEM, D.E. 82 (S.D. Fla. July 28, 2020) (approving one-third as attorneys' fees plus costs in multiple-plaintiff action); *Brenowitz v. Implant Seminars, Inc.*, No. 17 Civ. 20184, 2017 WL 3438879, at *5 (S.D. Fla. Aug. 10, 2017) (approving 40% of settlement as attorneys' fees); *Figueroa v. Advantage OPCO, LLC*, No. 15-cv-62479, 2017 WL 11220380, at *1 (S.D. Fla. Jan. 26, 2017) (recommending attorneys' fees of one-third of settlement fund); *Reyes v. AT&T Mobility Services, LLC,* No. 10 Civ. 20837, 2013 WL 12219252, at *3 (S.D. Fla. June 21, 2013); *Wolff v. Cash 4 Titles*, No. 03 Civ. 22778, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement"). Here, the retainer agreements and consent forms outline that Plaintiffs' Counsel would seek attorneys' fees of one-third the total recovery and the Settlement Agreement signed by the Plaintiffs outlines the attorneys' fees and costs sought. During the course of settlement negotiations, Plaintiffs' counsel included in their initial demand and subsequent responses an additional amount of damages as attorneys' fees and costs.

This sought fee award is further reasonable under the circumstances because a cross-check of the requested fee award shows that the requested fee is less than Plaintiffs' Counsel's current lodestar. As of the date of this motion, F&S has expended $23,308.75 in attorney time prosecuting this action and $690.00 in out-of-pocket expenses.[3] These hours were compiled from

---

[3] For counsel qualifications and a breakdown of time and rates and expenses, please see **Exhibit A**. In applying billing judgment, F&S removed the time spent on this file by first-year associate David Sack. The amount cited

8

contemporaneous time records maintained by each attorney participating in the case and are reasonable for a multiple-plaintiff case that had substantial pre-suit discussions, prolonged settlement discussions, and the drafting of Plaintiffs' anticipated motion for collective certification. As a result, the requested attorneys' fees and costs are fair and reasonable.

## CONCLUSION

For the above reasons, the Parties respectfully request that the Court approve the Parties' Settlement Agreement, enter Final Order of Dismissal with Prejudice (attached as **Exhibit B**), and maintain jurisdiction to enforce the Settlement Agreement.

Dated: August 25, 2020

Respectfully submitted,

| | |
|---|---|
| /s/ Armando A. Ortiz | /s/ Ingrid H. Ponce |
| Brian S. Schaffer, *admitted pro hac vice* | Ingrid H. Ponce |
| Armando A. Ortiz, FBN: 0102778 | Elitsa V. Yotkova |
| **FITAPELLI & SCHAFFER, LLP** | **STEARNS WEAVER MILLER** |
| 28 Liberty Street, 30th Floor | **WEISSLER** |
| New York, New York 10005 | **ALHADEFF & SITTERSON, P.A.** |
| Telephone: (212) 300-0375 | 150 West Flagler Street, Suite 2200 |
| Facsimile: (212) 481-1333 | Miami, Florida 33130 |
| bschaffer@fslawfirm.com | iponce@stearnsweaver.com |
| aortiz@fslawfirm.com | eyotkova@stearnsweaver.com |
| *Attorneys for Plaintiffs* | *Attorneys for Defendants* |

---

above does not include his time.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of this document was filed using the Court's CM/ECF filing system, which will send a notice of filing to all counsel of record.

/s/ Armando A. Ortiz

Armando A. Ortiz

**SERVICE LIST**

Ingrid H. Ponce
Elitsa V. Yotkova
**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**
150 West Flagler Street, Suite 2200
Miami, Florida 33130
iponce@stearnsweaver.com
eyotkova@stearnsweaver.com

*Attorneys for Defendants RA SUSHI HOLDING CORPORATION and RA SUSHI TOWNE SQUARE CORP*